# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

CIVIL ACTION NO. 3:18CV-00053-JHM

CALEB ELMORE                                                        PLAINTIFF

V.

BELLARMINE UNIVERSITY                                   DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for preliminary injunction by Plaintiff, Caleb Elmore [DN 3]. A preliminary injunction hearing was held on March 13, 2018. Fully briefed and argued, this matter is ripe for decision.

## I. BACKGROUND

Plaintiff, Caleb Elmore, is a student at Defendant, Bellarmine University, a private university located in Louisville, Kentucky. On January 25, 2018, Plaintiff filed this action for breach of contract, promissory estoppel, negligence, and violation of Title IX. Plaintiff asserts that Bellarmine imposed disciplinary sanctions against him in retaliation for his complaints of sexual misconduct against a Bellarmine chemistry professor, Dr. Francis Barrios. Plaintiff also filed this motion seeking a preliminary injunction prohibiting Bellarmine from imposing discipline on him "in violation of its contractual obligations and in retaliation for Caleb Elmore asserting a Title IX sexual harassment complaint against a Bellarmine faculty member." (Motion at 3.)

Plaintiff contends that in the spring and summer of 2017 Dr. Barrios sought a sexual relationship with Elmore and engaged in a series of sexually explicit text messages. Plaintiff alleges that on September 6, 2017, he and Dr. Barrios had a disagreement regarding a research

project and his foreign language requirement that resulted in the end of the relationship.

On September 7, 2017, Dr. Barrios met with Dr. Pat Holt, his department chair, and communicated that Elmore became upset when Dr. Barrios refused to support his request to count a study abroad experience towards the school's foreign language requirement and that Elmore threatened to kill him. On September 13, 2017, Elmore met with Dr. Holt who informed Elmore that he would be required to withdraw from the research project with Dr. Barrios and indicated that an apology letter to Dr. Barrios from Elmore would "make this go away." Elmore refused to apologize and refused to relinquish his role in the research project. Elmore maintains that Dr. Barrios made this false allegation against him in retaliation for Elmore ending their relationship and in an effort to intimidate him from reporting the inappropriate relationship to Bellarmine. On September 14, 2017, Dr. Sean McGreevey, Dean of Students, met with Elmore about the alleged incident. Dr. McGreevey testified that he believed Elmore wanted a hearing to explain his side of the story.

On September 25, 2017, Dr. Barrios filed a formal complaint with Bellarmine in which he alleged Plaintiff violated Bellarmine's Student Code of Conduct by threatening to kill him, and Bellarmine began a formal investigation. On September 26, 2017, Elmore received a notice that he was being charged with a violation of the Code of Student Conduct for the incident on September 6, 2017. Dr. McGreevey again met with Elmore to inform him of the charges. The Notice of Alleged Violation(s) reflected Elmore's name, date of incident, location of incident, time of incident, and described the incident as follows: "[Elmore] allegedly verbally harassed a Bellarmine University faculty member in the faculty member's office with threats of physical harm." The Notice indicated the Student Code of Conduct violations as "2.00 Harassment," "4.00 Violation of Federal, State, Local Law and/or University Policies," and "13.00 Disorderly

Conduct." (Preliminary Injunction Hearing, Exhibit 3.)

An initial hearing on Elmore's Student Code of Conduct violations was set for October 11, 2017. On October 5, 2017, Elmore filed a complaint under Bellarmine's Sexual Misconduct Policy alleging that Dr. Barrios sexually harassed him. Plaintiff requested a stay of his Student Code violation hearing as a result of his sexual harassment allegations. Bellarmine granted the stay.

Bellarmine conducted an investigation of Elmore's sexual harassment complaint led by Clare Dever and Dr. Kevin Thomas. On December 21, 2017, Bellarmine reset the hearing on Elmore's claim of sexual misconduct by Dr. Barrios to January 12, 2018. On December 22, 2017, Elmore's counsel expressed concerns about the investigative report prepared by Dever and Thomas, specifically the investigators' emphasis on the issue of consent, instead of the issue of discrimination for purposes of Title IX liability. (Preliminary Injunction Hearing, Exhibit 6.) Additionally, Elmore's counsel later requested a delay of the Title IX hearing due to a conflict with the parties' schedules.

As a result of Plaintiff's sexual harassment complaint and subsequent investigation, Dr. Barrios was dismissed from his position at Bellarmine on December 21, 2017. Bellarmine terminated Dr. Barrios for engaging in a "highly inappropriate relationship with one of your students," which included text messages with extensive sexual innuendo, vulgar language, extensive reference to genitalia, threats of violence against a fellow faculty member which was not reported to any campus official, and invitations to visit Dr. Barrios' home. In the letter, Bellarmine noted that the sexual harassment proceeding was still pending, but that regardless of its outcome, the investigation leads them to believe termination is warranted. (Dec. 21, 2017 Letter from Pfeffer to Barrios, Preliminary Injunction Hearing, Exhibit 4.)

On December 30, 2017, Elmore and his counsel were notified via email from Bellarmine's counsel that Dr. Barrios would not be returning to Bellarmine. Additionally, Bellarmine agreed to the delay of the Title IX hearing, but notified counsel that Bellarmine had decided to proceed with Elmore's student code hearing. Bellarmine added two new code of conduct violations. Specifically, Bellarmine maintained that that Plaintiff violated Bellarmine's Student Code of Conduct resulting when (1) he threatened Dr. Akhtar Mahmood in two text messages to Dr. Francis Barrios on June 2, 2017 (to kill Dr. Mahmood) and July 3, 2017 (to destroy him), and (2) he threatened to kill Dr. Barrios and have him fired on September 6, 2017. The email provided in relevant part:

> Mr. Elmore is being charged with violating Bellarmine's Code of Student Conduct on three separate occasions.
>
> First, he is being charged in connection with the incident that occurred in Dr. Barrios' office on September 6, 2017. This is the same violation presented to Mr. Elmore last September. Additionally, the hearing will also address alleged threats made by Mr. Elmore toward Dr. Mahmood on June 2, 2017 and July 3, 2017. As you may know, the existence of these threats came to our attention during the course of the investigation associated with the sexual misconduct hearing, and our review of the report and the totality of the circumstances surrounding Mr. Elmore's conduct as a student has led to the conclusion that his conduct as set forth in the text messages from last summer should be addressed in the student code hearing.
>
> These alleged violations are associated with [the] following provisions of Bellarmine's Code of Student Conduct:
>
>     2. Intentionally or recklessly harassing or causing physical harm to others or causing apprehension of harm. Harassment includes, but is not limited to, stalking, verbal harassment, hate speech, bullying, cyber-bullying, and verbal threats.
>
>     4. Violation of federal, state, or local laws and ordinances, or University policies including the residence hall contract.

> 13. Conduct which is disorderly, obscene, lewd, indecent, or a breach of peace. This includes, but is not limited to, physical, electronic or verbal misconduct.

(Hearing, Exhibit 9.) Finally, Bellarmine "concluded that Mr. Elmore's status as a resident advisor should be suspended until at least the conclusion of the student code hearing." (Id.)

At the preliminary injunction hearing, Dr. McGreevey testified that Leslie Ashford, Bellarmine's Director of Housing and Residence Life and Associate Dean of Students, made the decision to remove Elmore from his position as a resident advisor which Elmore had served in throughout the fall of 2017. Dr. McGreevey further testified that he received the evidence related to the additional student code violation charges from Lynn Bynum, Bellarmine's Title IX Coordinator. These additional charges were derived from text messages provided by Elmore in support of his sexual harassment complaint against Dr. Barrios. Elmore testified that he applied to Bellarmine for amnesty for any student code violations discovered as result of disclosures he made as part of his sexual harassment complaint. Dr. McGreevey testified that Bynum denied the request for amnesty and disclosed the Mahmood-related text messages to him.

A hearing on the Student Code of Conduct violations occurred on January 9, 2018. Elmore was not permitted to have counsel present at the hearing. On January 11, 2018, Dr. McGreevey issued a decision finding that Plaintiff violated three separate provisions of the Student Code of Conduct. Plaintiff was placed on probation through December 31, 2018, and is required to perform fifteen (15) hours of community service, meet with a university staff member to guide him through his community service, and to refrain from contact with two of the witnesses at his hearing. The decision indicated that as a result of his probationary status, he was "no longer in good standing with the institution." (Hearing, Exhibit 13.)

Plaintiff alleges that as a result of not being in good standing with the school, he is unable

to participate in a pre-paid and non-refundable study abroad course. Additionally, Plaintiff alleges that he will be required to disclose on his applications to potential transfer schools, professional schools, and any licensing authorities that he was subject to discipline at his school. Plaintiff contends that the probation has damaged his academic and professional reputations and may affect his ability to enroll at other institutions of higher education. He may also lose eligibility for a valuable scholarship. Plaintiff maintains that the purpose of this current motion for preliminary injunction is to restore the status quo, i.e. that Caleb Elmore is a student in good standing at Bellarmine, and to prohibit Bellarmine from imposing the discipline outlined in the January 11, 2018, letter.

## II. STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy that is generally used to preserve the status quo between the parties pending a final determination of the merits of the action. It is also used, as here, to restore the status quo. In determining whether to issue a preliminary injunction, the Court considers: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp., 511 F.3d 535, 542 (6th Cir. 2007) (quoting Tumblebus Inc. v. Cranmer, 399 F.3d 754, 760 (6th Cir. 2005)). These four considerations are "factors to be balanced and not prerequisites that must be satisfied." McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012) (quoting In re Eagle–Picher Indus., Inc., 963 F.2d 855, 859 (6th Cir. 1992)). These factors are to "guide the discretion of the court" and are "not meant to be rigid and unbending requirements." Id. Accordingly, it is unnecessary for the Court to make findings regarding each

factor if "fewer are dispositive of the issue." In re DeLorean Motor Co., 755 F.2d 1223, 1228 (6th Cir. 1985) (citing United States v. Sch. Dist. of Ferndale, Mich., 577 F.2d 1339, 1352 (6th Cir. 1978)).

"The party seeking the preliminary injunction bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." McNeilly, 684 F.3d at 615 (citing Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 441 (1974)). However, a party is not required to prove its case in full at the preliminary injunction stage. Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 400 (6th Cir. 1997) (citing University of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)). Therefore, the findings of fact and conclusions of law of a district court are not binding at a trial on the merits. Id.

### III. DISCUSSION

**A. Likelihood of Success on the Merits**

The Court first considers whether Plaintiff has "demonstrated 'a strong likelihood of success on the merits.'" Tenke, 511 F.3d at 543 (quoting Tumblebus, 399 F.3d at 760). To satisfy this burden, a movant is not required to prove its case in full, but must show "more than a mere possibility of success" on the merits. Id. "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id. (quoting Six Clinics Holding Corp., 119 F.3d at 402).

**1. Title IX Retaliation Claims**

Claims for retaliation under Title IX are analyzed under the standards developed under federal law for Title VII cases. Nelson v. Christian Bros. University, 226 Fed. Appx. 448, 454 (6th Cir. 2007). To make out a claim of retaliation, a plaintiff must show that: (1) he engaged in

7

a protected activity; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. Scott v. Metropolitan Health Corp., 234 Fed. Appx. 341, 346 (6th Cir. 2007); Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000). See also Varlesi v. Wayne State Univ., 643 Fed. Appx. 507 (6th Cir. 2016). If and when a plaintiff has established a *prima facie* case, the burden of production once again shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer carries that burden, the plaintiff bears the burden of demonstrating that the employer's reason is pretextual. Blair v. Henry Filters, Inc., 505 F.3d 517, 524 (6th Cir. 2007).

Bellarmine does not dispute the first three elements of the *prima facie* case. Instead, Bellarmine contends that Plaintiff cannot prove likelihood of success on the merits because he has failed to establish the causal connection between the protected activity and the adverse action. Further, Bellarmine maintains that even if Plaintiff was able to establish a *prima facie* case, Bellarmine has produced legitimate, non-discriminatory reasons for the disciplinary action, and Elmore is unable to establish that those reasons were a pretext for retaliation.

### a. Causal Connection

"Causation can be proven indirectly through circumstantial evidence such as suspicious timing." Lindsay v. Yates, 578 F.3d 407, 418 (6th Cir. 2009) (citing Mickey v. Zeidler Tool and Die Co., 516 F.3d 516, 524–25 (6th Cir. 2008). Specifically, the Sixth Circuit has found that temporal proximity between an assertion of Title VII rights, or in our case Title IX rights, and "a materially adverse action is sufficient to establish the causal connection element of a retaliation claim '[w]here an adverse employment action occurs *very close* in time after an employer learns

of a protected activity.'" Lindsay, 578 F.3d at 418 (citing Mickey, 516 F.3d at 525). However, the more time that elapses between the protected activity and the adverse action, the more the plaintiff must supplement his claim with "other evidence of retaliatory conduct to establish causality." Mickey, 516 F.3d at 525.

The Sixth Circuit has found sufficient evidence of a causal connection where the time between the employee's protected activity and the employer's adverse action was two to three months. Cooley v. East Tennessee Human Res. Agency, Inc., 2017 WL 6547387, at *6 (6th Cir. Dec. 22, 2017); Dye v. Office of the Racing Comm'n, 702 F.3d 286, 306 (6th Cir. 2012) (finding that two months sufficient to show a causal connection); Singfield v. Akron Metro. Housing Auth., 389 F.3d 555, 563 (6th Cir. 2004) (stating that three months was "significant enough to constitute sufficient evidence of a causal connection"); Passmore v. Mapco Express, Inc., 2017 WL 4176268, at *10 (M.D. Tenn. Sept. 19, 2017).

In the present case, Bellarmine notified Elmore less than three months after his filing of the Title IX complaint against Dr. Barrios that Bellarmine intended to proceed on the September 2017 Student Code of Conduct violation and on two new code violations derived from Elmore's Title IX complaint. Bellarmine also removed Elmore from his resident advisor position at that time. In fact, Dr. McGreevey issued the final disciplinary decision a little over three months after the Title IX complaint and less than a month after Bellarmine terminated Dr. Barrios. Given the timing of the disciplinary action, the Court finds that the temporal proximity is sufficient for Elmore to meet his *prima facie* burden of showing causation.

### b. Pretext

In response to the motion, Bellarmine articulated a legitimate, non-discriminatory reason for its actions. Specifically, Bellarmine states that it did not retaliate against Elmore for filing a

9

sexual harassment complaint against a professor. Bellarmine maintains that the only actions taken by it against Elmore stem from the fact that Elmore threatened two faculty members in clear violation of Bellarmine's Student Code of Conduct. Since Bellarmine satisfied its burden of production, the burden now shifts back to Elmore to show that the reason given by Bellarmine was pretextual. See Harris v. Metro Government of Nashville, 594 F.3d 476, 485 (6th Cir. 2010). Elmore may prove pretext by showing either that: (1) the proffered reason had no basis in fact; (2) the proffered reason did not actually motivate the disciplinary action; or (3) the proffered reason was insufficient to motivate the disciplinary action. See Manzer v. Diamond Shamrock Chems. Co., 29 F.3d 1078, 1084 (6th Cir. 1994). See also Marcum ex rel. C.V. v. Board of Educ. of Bloom-Carroll Local Sch. Dist., 727 F. Supp. 2d 657, 670–71 (S.D. Ohio 2010).

For purposes of this motion, Elmore argues that the proffered reasons articulated by Bellarmine did not actually motivate the disciplinary action or were insufficient to motivate the disciplinary action. At this stage of the litigation and after considering the evidence presented at the hearing, the Court finds that Elmore has "demonstrated 'a strong likelihood of success on the merits.'" Tenke, 511 F.3d at 543 (quoting Tumblebus, 399 F.3d at 760). Plaintiff raised questions going to the merits "so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." Id.

The record reflects that when informed of the September 6, 2017, threat by Elmore, Bellarmine did not inform law enforcement, campus security, or remove Elmore from his position as a resident advisor. Instead, Department Chair Holt meet with Elmore in an attempt to resolve the incident, requested he withdraw from Dr. Barrios' research project, and write Dr. Barrios an apology to "make this go away." When Elmore declined to withdraw from the project

10

and apologize, Dr. McGreevey then spoke with Elmore and eventually issued a Notice of Alleged Violation(s) of the Student Code of Conduct related solely to the September 6, 2017, incident. However, once Elmore filed his Title IX sexual misconduct complaint against Dr. Barrios and once Bellarmine terminated Dr. Barrios, Bellarmine not only proceeded with the original code of conduct violation, but also issued a second Notice of Alleged Violation(s) of the Student Code of Conduct related to additional threats against another faculty member. Significantly, the evidence regarding the additional threat was disclosed by Elmore himself in support of his sexual harassment claim in the Title IX proceeding. In fact, Lynn Bynum, Bellarmine's Title IX Coordinator, denied Elmore amnesty for any student code violations discovered as result of his disclosure of the sexual harassment evidence and notified Dr. McGreevey of the June and July text messages related to Dr. Mahmood. Once again, Bellarmine did not notify law enforcement, campus security, or even Dr. Mahmood of the threats. Furthermore, Bellarmine did not remove Elmore from his position as a resident advisor upon learning of the additional threats.

Bellarmine's failure to notify law enforcement, campus security, or Dr. Mahmood of the alleged threats against Dr. Barrios and/or Dr. Mahmood suggests that the administration did not believe that Elmore posed a threat to faculty, staff, or students at Bellarmine at or near the time of the alleged threats or thereafter. A jury could infer that that Bellarmine considered the alleged threat made against Dr. Barrios a minor offense, not subject to discipline given Dr. Holt's conversation with Elmore in September of 2017 that suggested an apology would make the complaint by Dr. Barrios go away. A jury could also believe that this type of conduct given the context of the alleged threats is conduct that the school would not typically punish through the formal disciplinary process. However, once Elmore filed his Title IX sexual harassment claim

and Bellarmine terminated Dr. Barrios, Bellarmine (1) informed Elmore that he would not only face a disciplinary hearing on the original charges, but also on new charges based on information Elmore voluntarily provided to the school's Title IX investigators, (2) informed Elmore that he would be immediately removed as a resident advisor, resulting in the loss of a stipend for room and board and requiring him to relocate to a new room, and (3) ultimately chose to place Elmore on probationary status.

Plaintiff has tendered sufficient evidence from which a jury could believe that Bellarmine's proffered reason – student code of conduct violations -- did not actually motivate or was insufficient to motivate the disciplinary action given the fact that Bellarmine initially believed that the single violation could be remedied by an apology letter, did not notify law enforcement of the alleged threats against Dr. Barrios or Dr. Mahmood, and retained Elmore as a resident advisor throughout the fall semester. Thus, one could argue that Bellarmine's view of the harm posed by Elmore's threats did not motivate the discipline imposed.

At this stage of the proceedings, the Court concludes that the likelihood of success on the merits factor weighs in favor of Elmore. The parties are reminded that this decision does not bind the Court at the summary judgment stage or trial on the merits.

**2. Breach of Contract Claim**

Under Kentucky law, a claim for breach of contract requires the complainant to establish three things: (1) the existence of a contract; (2) breach of that contract; and (3) damages stemming from the breach. Metro Louisville/Jefferson Cnty. Gov't v. Abma, 326 S.W.3d 1, 8 (Ky. App. 2009).

In his breach of contract claim, Plaintiff alleges that Bellarmine breached the explicit guarantee of essential fairness, the implied covenant of good faith and fair dealing, and other

contractual provisions contained in the Student Handbook. According to Plaintiff, the breaches included: (1) imposed discipline without permitting him to confront the adverse witness – Dr. Barrios; (2) imposed discipline without providing sufficient notice, (3) imposed discipline without providing reasonable access to the investigative report and other material used against him, (4) imposed discipline without conducting an adequate investigation; and (5) imposed discipline without conducting a fair hearing. Having decided that the Plaintiff has demonstrated a likelihood of success on the merits with respect to his retaliation claim, the Court declines to address the breach of contract claim at this time.

**B. Irreparable Injury to Plaintiff Absent the Injunction**

The next factor the Court considers in deciding whether to grant a preliminary injunction is whether Plaintiff will suffer irreparable injury absent the injunction. Tenke, 511 F.3d at 550. "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." Id. at 550 (quoting Overstreet v. Lexington-Fayette Urban Cnty. Gov't, 305 F.3d 566, 578 (6th Cir. 2002)). That is, a court of equity will not step in to issue a preliminary injunction if there is "[a]n adequate remedy at law." USACO Coal Co. v. Carbomin Energy, Inc., 689 F.2d 94, 99 (6th Cir. 1982). "[A]n injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." Tenke, 511 F.3d at 550 (quoting Basicomputer Corp. v. Scott, 973 F.2d 507, 511 (6th Cir. 1992)). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." Sampson v. Murray, 415 U.S. 61, 90 (1974) (quoting Virginia Petroleum Jobbers Ass'n v. Fed. Powers Comm'n, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Plaintiff has presented sufficient evidence to support his claim that he will suffer irreparable harm if the Court does not enjoin Bellarmine from imposing the discipline in question because probation would damage Elmore's academic and professional reputations and may affect his ability to enroll at other institutions of higher education or medical school and to pursue a career. See Doe v. Cummins, 662 Fed. Appx. 437, 445 (6th Cir. 2016). The Sixth Circuit has held that an action which puts an injured party's reputation at risk may lead to "irreparable harm." Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc., 453 F.3d 377, 381–82 (6th Cir. 2006); United States v. Miami University, 294 F.3d 797, 819 (6th Cir. 2002) ("An injury is not fully compensable by money damages if the nature of the plaintiff's loss would make damages difficult to calculate. In general, . . . injury to reputation [is] difficult to calculate." (internal citation omitted)). The record reflects that Plaintiff would have to disclose his probationary status in both undergraduate transfer and medical school applications. Removal as a residential advisor can be addressed through monetary damages.

**C. Possibility of Substantial Harm to Others**

The third factor in determining whether to issue a preliminary injunction is "whether the issuance of the injunction would cause substantial harm to others." Tenke, 511 F.3d at 550–51 (quoting Tumblebus, 399 F.3d at 760). This factor is most commonly examined in terms of the balance of hardship between the parties, requiring the Court to determine whether the harm that would be suffered by Plaintiff if the Court did not grant the injunction outweighs the harm that would be suffered by the Defendant or others if the injunction is granted. See Aluminum Workers Int'l Union v. Consolidated Aluminum Corp., 696 F.2d 437, 444 (6th Cir. 1982).

Bellarmine argues that if the injunction is granted, Plaintiff will have received no punishment or learned the consequences from his actions. Additionally, Bellarmine argues that

14

granting injunctive relief will also harm third parties as Plaintiff has threatened a professor that is still employed by Bellarmine. Bellarmine has not demonstrated it will suffer harm as a result of the preliminary injunction. At the time Bellarmine learned of the threats, Bellarmine did not contact law enforcement or have Elmore removed from the campus. Instead, after the hearing, Bellarmine deemed the no contact letter sufficient to protect Dr. Mahmood. As a result, this factor weighs in favor of Elmore.

**D. Public Interest Served by the Injunction**

The final factor the Court must evaluate is "whether the public interest would be served by the issuance of the injunction." Tenke, 511 F.3d at 551. The Court does not find that this factor weighs in favor of either party.

**E. Bond**

Federal Rule of Civil Procedure 65(c) provides that a Court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). Despite the mandatory language of the rule, "the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security," if any. Appalachian Reg'l Healthcare, Inc. v. Coventry Health and Life Ins. Co., 714 F.3d 424, 431 (6th Cir. 2013) (quoting Moltan Co. v. Eagle–Picher Indus., Inc., 55 F.3d 1171, 1176 (6th Cir. 1995)). For example, "the district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the [non-movant] from enjoining his or her conduct." Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009); see Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782–83 (10th Cir. 1964) (under Fed.

R. Civ. P. 65(c), judge has discretion to waive posting of security in absence of showing likelihood of possible harm).

The Court exercises its discretionary power to waive the security requirement of Rule 65(c) because no bond is necessary under the facts of this case. As discussed above, the Court finds that Bellarmine will suffer no harm as a result of the preliminary injunction. Accordingly, the Court will not require a bond.

### IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that the motion for preliminary injunction by Plaintiff, Caleb Elmore [DN 3] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant, Bellarmine University, is preliminarily enjoined from imposing the discipline of probation and community service outlined in the January 11, 2018, decision against Plaintiff, Caleb Elmore. Plaintiff, Caleb Elmore, shall be returned to a student in good standing at Bellarmine University until this matter is concluded.

cc: counsel of record

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 28, 2018